*New-Haven,*
July, 1844.

Smith
*v.*
Carr.

### SMITH and another *against* CARR and others.

On a motion for a new trial for a misdirection, the whole charge must be taken together, and construed with reference to the subject matter of the controversy and the claims of the parties before the court.

It is enough that the court does not lay down any erroneous proposition, by which the jury may be misled, nor omit to charge them on a point that may be material, when requested so to do.

Because an abstract proposition, which, as such, is untenable, but which can have no effect upon the finding, gets incorporated into the charge, this is no ground for a new trial.

Therefore, where the title to a carriage was the subject of controversy, which was claimed by the plaintiff, by purchase from *A*, who had it of *B*, the original owner, and by the defendant, as assignee of *B*, the defendant claiming, that *B*, in the sale to *A*, was the defendant's agent under a limited authority, which was not pursued, *and that known to A ;* and the charge, adapting itself to the defendant's claim, instructed the jury, that if they should find *B's* authority a limited one, which was not pursued, *and that known to A*, no title passed to *A*, by such sale ; after a verdict for the plaintiff, and a motion for a new trial by the defendant, for a misdirection, it was held, that such motion ought not to prevail, although it may not be true, as an abstract rule of law, that in order to protect the principal, the person dealing with a special agent must have knowledge of his limited powers.

If *A* wrongfully takes possession of the property of *B*, a subsequent ratification by *B* of such wrongful acts, may, under certain circumstances, be equivalent to a previous delivery by *B* to *A*.

THIS was an action of trespass for taking a certain carriage.

The cause was tried, on the general issue, at *New-Haven, January* term, 1844, before *Hinman*, J.

On the trial, it being proved, that the defendants took the carriage in question out of the possession of the plaintiffs, and that the plaintiffs purchased it of *Jared Foot*, who claimed to have previously purchased it of *Edwin Lee*, the defendants claimed, and offered evidence to prove, that it was, at the time of *Foot's* purchase of it, owned by *English* and *Mix*, two of the defendants, and that *Carr*, the other defendant, took it, by writ of attachment against *English* and *Mix ;* and for this purpose, evidence was offered by them, tending to prove, that in *May,* 1842, *Lee*, then carrying on the business of a carriage-maker, at a shop in *North-Haven*, failed in business, being at the time largely indebted to *English* and *Mix ;* that to pay or secure such indebtedness, he conveyed, by bill of sale, his stock in the shop, consisting of parts of carriages

New-Haven,
July, 1844.

Smith
*v.*
Carr.

and materials for making carriages; that *English* and *Mix* took possession of such property, and employed *Lee* to work it up into carriages for them; that the carriage in question was made by *Lee* out of a carriage body and other materials so assigned by him to them; that *Foot*, at the time he purchased said carriage of *Lee*, well knew, that the materials of which it was made, had been assigned to *English* and *Mix*, and that *Lee* was their agent for working them up; that in the summer or fall of 1842, said carriage then being in an unfinished state, *Foot*, knowing that it belonged to *English* and *Mix*, applied to *Lee* to purchase it; that *Lee* was not authorized to sell it to *Foot*, unless upon the payment of 100 dollars therefor, before it was delivered, which was also well known to *Foot*; that by the terms of the agreement between *Lee* and *Foot*, the carriage was not to be delivered to *Foot*, but upon the previous payment of 100 dollars in cash; that no delivery of the carriage was ever made, but *Foot* took it from *Lee's* shop in *North-Haven* wrongfully, without the knowledge or consent of *Lee*, or of *English* and *Mix*, and sold it to the plaintiffs. And the defendants claimed, that if the jury should find, that the carriage belonged to *English* and *Mix*, and was left by them with *Lee*, to be finished for them, and that known to *Foot*, no title ever passed to *Foot*, by any sale thereof to him by *Lee*.

The defendants also claimed, that if the jury should find, that the carriage was not to be delivered until the 100 dollars was paid therefor, and that no delivery was in fact made, but that *Foot* took it from the shop, as claimed by them, then *Foot* never acquired any title thereto.

They also claimed, that if the jury should find, that *Lee* was never authorized to sell the carriage to *Foot*, but upon the previous payment of 100 dollars, and should also find, that it belonged to them, and was only left with *Lee* to be finished for them, and that known to *Foot*, and he negotiated with *Lee*, as their agent, for its purchase, at the same time knowing the extent of *Lee's* agency, then *Foot* never acquired any title to the carriage, by any purchase thereof from *Lee*, without first paying the 100 dollars.

The plaintiffs claimed to have proved, that after *Foot* took possession of the carriage, and sold it to them, both *Lee* and *English* and *Mix* were informed, that *Foot* had so taken

possession thereof, and sold it to the plaintiffs ; and that they both assented to and ratified the sale, well knowing that the 100 dollars had not been paid ; and the plaintiffs claimed, that if the jury should so find, then they acquired a good title, by their purchase from *Foot.*

The plaintiffs also denied, that *Foot* knew of the assignment to *English* and *Mix,* or that they claimed any interest in the carriage ; and they claimed to have proved, that after the assignment, *Lee* remained in possession of his shop, and continued to carry on the carriage-making business, as he had done previously ; and that all of the assigned property was suffered, by *English* and *Mix,* to remain in his possession, and that he used, sold and dealt with it as his own, holding himself out to the world as the owner of it, with the knowledge, and by the permission, of *English* and *Mix;* that in the fall of 1842, *Lee,* being in possession of the carriage, then unfinished, bargained with *Foot* to sell it to him, for the sum of 160 dollars, to be paid 100 dollars in cash, and 60 dollars in provisions, and to be delivered to *Foot,* when it should be finished, about the 1st of *January,* 1843 ; that on the 11th of *January,* 1843, sundry payments in provisions having been made for the carriage, and *Foot,* supposing it to be finished, took it from the shop, and sold it to the plaintiffs, and, on the same day, informed *Lee* of his having so done, to which *Lee* made no objection, but assented thereto, and then received from *Foot* part payment of the 100 dollars in cash.   The plaintiffs thereupon claimed, that if the jury should find these facts to be proved, and should find the assignment to *English* and *Mix,* and that they authorized and permitted *Lee,* so being in possession of the carriage, to use it and deal with it, and with the assigned property, as his own, as claimed by them, then a sale and delivery of it by *Lee,* would vest a good title in *Foot.*

The court charged the jury, that if they should find, that the carriage had never been delivered to *Foot* by *Lee,* and *Foot* was never authorized to take it, then no title thereto passed to *Foot,* and the plaintiffs were not entitled to recover, unless *Lee,* after *Foot* took possession of it and sold it to the plaintiffs, knew thereof, and assented thereto.   But if they should find, that *Foot* was a *bona fide* purchaser of the carriage of *Lee,* and had no knowledge of the assignment to

*English* and *Mix*, and should also find, that *English* and *Mix*, after the assignment to them, permitted the property to remain in the possession of *Lee*, and suffered him to use it as his own, and to hold himself out to the world as owner of it, and *Foot* purchased it, while *Lee* was so holding it, he, *Foot*, supposing *Lee* to be the owner of it ; and should also find, that the carriage was delivered by *Lee* to *Foot*, or that after *Foot* had obtained possession of it, and sold it to the plaintiffs, *Lee* assented thereto, and ratified the sale ; then the plaintiffs had a good title, and were entitled to recover in this action. But if they should find, that *Foot*, at the time he purchased it, knew that it had been previously assigned to *English* and *Mix*, and was thus claimed by them, and that they had never authorized *Lee* to sell it ; or if they should find, that he was not authorized to sell it to *Foot* but upon the previous payment of 100 dollars in cash therefor, and that known to *Foot*, then no title ever passed to *Foot*, by any sale thereof to him by *Lee*, and the plaintiffs were not entitled to recover, unless they should also find, that *English* and *Mix*, knowing that said 100 dollars had not been paid, assented to and ratified said sale ; but that if *Foot* knew that *Lee* was agent of *English* and *Mix*, and ever treated with him as such, still if he was the general agent, and had authority to deal with the carriage as his own, to sell it, and on such sale deliver it, and they should also find, that *Lee*, knowing that *Foot* had obtained possession of the carriage and sold it to the plaintiffs, assented to and ratified the sale, then the plaintiffs obtained a good title by their purchase, and were entitled to recover. But if *Lee* was restricted in his agency, and *Foot* knew it ; if he had no authority to sell, without the 100 dollars being paid before delivery ; then *English* and *Mix* never parted with their interest in the carriage, without they assented to the delivery to *Foot*, knowing that the 100 dollars had not been paid.

The plaintiffs obtained a verdict ; and the defendants moved for a new trial for a misdirection.

*C. A. Ingersoll*, in support of the motion, contended, 1. That a special agent cannot bind his principal beyond his authority. *Skinner* v. *Dayton*, 5 *Johns. Ch. R.* 351. 365. *Batty* v. *Carswell*, 2 *Johns. R.* 48. *East-India Company* v. *Hensley*, 1 *Esp. Ca.* 112. *Fenn* v. *Harrison*, 3 *Term R.* 757.

*New-Haven,*
*July, 1844.*

Smith
*v.*
Carr.

2. That it is not necessary for the protection of the principal, that the person who deals with a special agent, should have *knowledge* of the limited powers of the agent.    *Gibson* v. *Colt,* 7 *Johns. R.* 390. and the cases above cited.

3. That in the present case, the claim of the defendants was unconditional, and pursuant to the principles above stated, *viz.* that if the jury should find, that *Lee* was special agent, his acts beyond his authority would not bind his principal; but the court charged, that knowledge on the part of *Foot* of the limited powers of *Lee,* was necessary to prevent his acts from binding the defendants.

4. That the charge of the court, that a subsequent ratification, by *Lee,* of the wrongful act of *Foot* in taking the carriage, would make that act wrongful, was erroneous.    No subsequent ratification, by the special agent, of an act out of his limits, can have any effect against the principal.    The wrongful taking by *Foot* did not divest the defendants of their title; and the subsequent assent of *Lee* cannot, upon any principle, be permitted to have that effect.

*Kimberly,* contra, did not controvert the legal positions, advanced by the counsel for the defendants, but insisted, that there was nothing inconsistent with those positions in the charge; or at any rate, that the defendants have no reason to complain of the charge, so far as those positions are concerned; or indeed, on any other account.    On the trial, the defendants claimed, that the carriage was theirs, and was left with *Lee* only to be finished, and that *Foot* knew it; that *Lee* was not authorized to sell it but on an advance of 100 dollars, which was also known to *Foot;* that by this agreement, the delivery was not to be made until the 100 dollars was paid; and that there never was any delivery, but that *Foot* took the carriage wrongfully.    The defendants then claimed, 1. that if the carriage belonged to them, and was only left to be finished, and that known to *Foot,* no title passed to *Foot;* 2. that if *Lee* was authorized to sell only upon the advance of 100 dollars, and no delivery was to be made until such advance, and no delivery was in fact made, but *Foot* took possession as claimed, no title passed; 3. that if *Lee* was authorized to sell only on the advance of 100 dollars, and that known to *Foot,* and he treated with *Lee,* as agent, knowing the extent of his

agency, *Foot* acquired no title, without the payment of the 100 dollars. Now, the charge meets these claims, in this manner. It instructs the jury, 1. that if *Lee* never delivered the carriage to *Foot*, and gave him no authority to take it, no title passed, unless *Lee* subsequently assented; 2. that if *English* and *Mix* permitted *Lee* to have possession of the carriage, and to use it as his own, and *Foot* purchased *bona fide*, and it was delivered, or *Lee* ratified, a good title passed; 3. that if *Foot* knew of the assignment to *English* and *Mix*, and they had never authorized the sale, or only upon the payment of 100 dollars, and that known to *Foot*, no title passed, unless *English* and *Mix* ratified, knowing that the 100 dollars was not paid; 4. that if *Foot* knew that *Lee* was agent, and dealt with him as such, yet if he was general agent, and had authority to deal with the carriage as his own, and ratified the sale to the plaintiffs, they acquired a good title—provided, that if *Lee* was restricted in his agency so that he could not sell without the advance of 100 dollars, *English* and *Mix* never parted with the title, unless they knowingly assented.

*Baldwin*, on the same side, declined argument.

HINMAN, J. If the expression, "and *Foot* knew it," in that part of the charge of the court below, where the jury were told, that, "if *Lee* was restricted in his agency, and *Foot* knew it, &c.," could have led the jury to suppose, that it was necessary for the protection of the principal, that the person who deals with a special agent, should have knowledge of such agent's limited powers; and if this, under the circumstances of the case, could have altered, or in any way affected, the verdict, to the prejudice of the defendants; then, without doubt, the charge cannot be supported, and the defendants are entitled to a new trial. But the sentence in which this expression appears, cannot be taken by itself, disconnected with the rest of the charge, with the subject matter of the suit, and with the claims of the parties before the court; but the whole charge must be taken together, and construed in reference to the case before the court, and the claims of the parties touching it. Could then the jury have been misled, by this proposition?

*New-Haven,*
July, 1844.

Smith
*v.*
Carr.

By looking through the motion, it will be seen, that *Foot's* knowledge of *Lee's* agency was no otherwise a question in the case, than as the defendants, for the purpose of showing, that *Foot* did not stand in the position of a *bona fide* purchaser of *Lee*, as the general owner of the property, but that he in fact purchased of *English* and *Mix*, through *Lee*, as their agent, claimed, that *Foot* knew of the assignment of the property originally from *Lee* to *English* and *Mix ;* that he knew that *Lee*, after the assignment, was their agent; and that he ever dealt with *Lee*, as such agent : and the defendants did not claim, that *Foot* was to be considered as dealing with *English* and *Mix*, unless he knew, that *Lee* was their agent. It was in reference to this claim of the defendants, that this part of the charge was given. So far, then, as the case was concerned, nothing depended upon *Foot's* knowledge, except the agency of *Lee*, which, under the peculiar circumstances of the case, did, in some measure, depend upon it.

*English* and *Mix's* relation to the property was such, and their title to it was in such a condition, that they did not choose to rest their claim to it, and, of course, their claim to defeat the title of the plaintiffs through *Foot*, upon their abstract title alone. But they chose to place their case upon the ground, that they had a title, which *Foot* recognized ; that he bought the property of them, and not of *Lee*, well knowing of their title, and the extent of *Lee's* authority to sell, as their agent ; and having placed their case on that ground, they cannot now be permitted to assume an entirely different position in regard to it. Had their title been such as to have made it safe for them to rest their case on it, irrespective of the recognition of *Foot*, when he dealt with *Lee* for the purchase, it would have been the duty of the court, if requested, to instruct the jury, that *Lee* could not deprive them of their title, by a sale, unless he was authorized by them so to do ; and that *Foot's* want of knowledge of the powers of *Lee*, as agent, could make no difference in the case. Had such been the claim, and had the case laid any foundation for it, without doubt, the court would have been bound to recognize the law as the defendants claim it. It is enough, that the court does not lay down any erroneous proposition, by which the jury may be misled, nor omit to charge them on a point that may be material, when requested so to do. Because a mere ab-

stract proposition, which can have no effect upon the finding, gets incorporated into the charge, this is no ground for a new trial. To hold that it is, would be to require, in the instructions of the court to the jury, as great, or greater accuracy, than is required in a special plea.

It was said, though not much insisted on, that the court erred in charging the jury, that the subsequent ratification of *Lee*, of the wrongful acts of *Foot* in taking possession of the carriage, would, under certain circumstances, be equivalent to a previous delivery. That part of the charge which is here complained of, is substantially this;—that if *Foot* purchased of *Lee*, as the general owner, supposing him to be such, and if *English & Mix*, after the assignment to them, permitted *Lee* to remain in possession, and to hold himself out to the world as the owner; and *Foot* purchased while *Lee* was so holding himself out as owner; and after he had obtained possession and sold it to the plaintiffs, if *Lee* assented thereto, and ratified the same; then the plaintiff had acquired a good title. This clearly is nothing more than saying, that the owner of a chattel, who has sold, but not delivered it, can sanction and ratify an unauthorized possession of it, acquired by the purchaser. And if *Lee*, as owner, had authority to deliver the carriage, it is not easy to see, why he could not assent to the possession previously acquired by *Foot*.

We do not, therefore, think there was any error in the charge, on account of which a new trial ought to be granted.

In this opinion the other Judges concurred.

New trial not to be granted.