*197
 
 Bronson, J.
 

 When one who is without fault himself, is attacked by another in such a manner or under • such circumstances as to furnish reasonable ground for apprehending a design to take away his life, or do him some great bodily harm, and there is reasonable ground for believing the danger imminent that such design will be accomplished, I think he may safely act upon appearances, and kill the assailant, if that be necessary to avoid the apprehended danger; and the killing will be justifiable, although it may afterwards turn out that the appearances were false, and there was
 
 in fact
 
 neither design to do him serious injury, nor danger that it would be done. He must decide at his peril upon the force of the circumstances in which he is placed, for that is a matter which will be subject to judicial review. But he will not act at the peril of making that guilt, if appearances prove false, which would be innocence had they proved true. I cannot better illustrate my meaning than by taking the case put by Judge, afterwards Chief Justice Parker, of Massachusetts, on the trial of Thomas O. Selfridge.
 
 “
 
 A. in the peaceable pursuit of his affairs sees B. walking rapidly towards him with an outstretched arm and a pistol in his hand, and using violent menaces against his life as he advances. Having approached near enough in the same attitude, A. who has a club in his hand, strikes B. over the head, before, or at the instant the pistol is discharged; and of the wound B. dies. It turns out that the pistol was loaded with powder only, and that the real design of B. was only to terrify A.” Upon this case the Judge inquires, “will any reasonable man say that A. is more criminal than he would have been if there had been a bullet in the pistol? Those who hold such doctrine must require, that a man so attacked must, before he strikes the assailant, stop and ascertain how the pistol was loaded—a doctrine which would entirely take away the right of self-defence. And when it is considered that the jury who try the cause, and not the party killing, are to judge of the reasonable grounds of his apprehension, no danger can be supposed to flow from this principle.” The Judge had before instructed, the jury, that “when from the nature of the attack, there is reasonable ground to believe that there is a design to destroy his life, or commit any
 
 *198
 
 felony upon his person, the killing of the assailant will be excusable homicide, although it should afterwards appear that no felony -was intended.”
 
 (Selfridge's Trial, p.
 
 160; 1
 
 Russ. on Crime,
 
 699,
 
 ed. of
 
 24;
 
 p.
 
 185,
 
 note, ed. of
 
 ’36.) To this doctrine I fully subscribe. A different rule would lay too heavy a burden upon poor humanity.
 

 I have stated the case of Selfridge the more fully, because it is not only an authority in point, but it is one which the revisers professed to follow in framing our statute touching this.question.
 

 I shall not stop to consider the common law distinctions between justifiable and excusable homicide, because our statute has placed killing in self-defence under the head of justifiable homicide. (2
 
 R. S.
 
 660, § 3.)
 

 The Massachusetts case lays down no new doctrine. The same principle was acted on in
 
 Levett’s case,
 
 recited by Jones, J. in
 
 Cook's case, (Cro. Car.
 
 538,) to the following effect. Levett was in bed with his wife, and asleep, in the night, when the servant ran to them, in fear, and told them that thieves were breaking open the house. He arose suddenly, and taking a drawn rapier in his hand, went down and was searching the-entry for the thieves, when his wife espying some one whom she knew not in the buttery, cried out to her husband, in great fear, “ here they be that would undo us.” Levett thereupon hastily entered the buttery in the dark, not knowing who was there, and thrusting with his rapier before him, killed Frances Freeman, who was lawfully in the house, and wholly without fault. On these facts, found by special verdict, the court held that it was not even a case of manslaughter, and the .defendant was wholly acquitted. Now here, the defendant acted upon information and appearances which were wholly false : and yet as he had reasonable grounds for believing them true, he was held guiltless.
 
 Foster, (Crown Law, p.
 
 299,) says of this case, “ possibly it might have been better ruled manslaughter at common law, due circumspection not having been used.” I do not understand him as questioning the principle of the decision, but as only expressing a doubt whether the principle was properly applied. He calls it nothing more than a case of manslaughter, tvnen, if a man may not act upon appearances, it was a plain
 
 *199
 
 case of murder. So far as I have observed, no other writer upon criminal law has questioned, in any degree, the decision in Levett’s case; and most of them have fully approved it. East, in his Pleas of the Crown,
 
 (vol.
 
 1,
 
 p.
 
 274, 375,) has done so. Hale, (1
 
 P. C.
 
 42, 474,) mentions it among cases where ignorance of the fact will excuse from all blame.
 
 Hawkins,
 
 (1 P.
 
 C.
 
 84,
 
 Curwood’s ed.)
 
 saj's the killing had not the appearance of a fault.
 
 Russell (on Crimes, vol.
 
 1,
 
 p.
 
 550,
 
 ed. of
 
 1836,) approves the decision, which he introduces with the remark, that “ important considerations will arise in cases of this kind, [he was speaking of homicide in defence of one’s person, habitation, or property,] as to the grounds which the party killing had for supposing that the person slain had a felonious design against him ; more especially where it afterwards appears that no such design existed.”
 
 Roscoe, (Crim. Ev. p.
 
 639,) says, “ it is not essential that an actual felony should be about to be committed in order to justify the killing. If the circumstances are such as that, after all reasonable caution, the party suspects that the felony is about to be immediately committed, he will be justified.” And he then gives
 
 Levett’s case
 
 as an ex ample.
 

 The case of
 
 Sir William Hawkesworth,
 
 who, through his own fault, was shot by the keeper of his park, who took him for a stranger who had come to destroy the deer, went upon the same principle. (1
 
 Hale’s P. C.
 
 40; 1
 
 East, P. C.
 
 275; 1
 
 Russ. on Cr.
 
 549.) Other cases are put in the books where the killing will be justified by appearances, though they afterwards prove false. A general, to try the vigilance or courage of his sentinel, comes upon the sentinel in the night in the posture of an enemy, and is killed. There the ignorance of the sentinel that it was his general, and not an enemy, will justify the killing. (1
 
 Hale’s P. C.
 
 42; 1
 
 East’s P. C.
 
 275; 1
 
 Russ.
 
 540.) The case mentioned by Lord Hale, which was before him at Peterborough, where a servant killed his master, supposing he was shooting at deer in the corn in obedience to his master’s orders, belongs to the same class. (1
 
 Hale’s P. C.
 
 40, 476; 1
 
 Russ.
 
 540.) In
 
 Rampton’s case, (Kelyng Rep.
 
 41,) the defendant killed his wife with a pistol which he had found in the
 
 *200
 
 street, after ascertaining, as he supposed, by a trial with the ramrod, that it was not loaded, though in fact it was charged with two bullets. This was adjudged to be manslaughter, and not merely misadventure.
 
 Foster, (Crown Law,
 
 263, 4,) calls this a hard case, and thinks the man should have been wholly acquitted, on the ground that he exercised due caution—the utmost caution not being necessary in such cases. But if the decision was right, as I am inclined to think it was, for the want of proper caution, still the case goes on the ground that the degree of guilt may be affected by appearances which afterwards prove false; for if he had not tried the pistol, it would have been murder.
 
 Foster, (p.
 
 265,) mentions a case which was tried before him, where the prisoner had shot his wife with a gun, which he supposed was not loaded. The judge, being of opinion that the prisoner had reasonable ground to believe that the gun was not loaded, directed the jury, that if they were of the same opinion, they should acquit the prisoner; and he was acquitted. In
 
 Meade's case,
 
 (1
 
 Lewin's Cr. Cas.
 
 184,) the prisoner had killéd with a pistol one of a great number of persons who came about his house in the night time, singing songs of menace, and using violent language. Holroyd, J. told the jury that if there was nothing but the song, and no
 
 appearance
 
 of violence—if they believed there was no
 
 reasonable ground
 
 for apprehending danger, the killing was murder. And in
 
 The People
 
 v.
 
 Rector,
 
 (19
 
 Wend.
 
 569,) Cowen, J. said, alarm on the part
 
 of
 
 the prisoner,
 
 on apparent though unreal
 
 grounds, was pertinent to the issue. In
 
 The U. S.
 
 v.
 
 Wiltberger,
 
 (3
 
 Wash. C. C.
 
 515, 521,) the judge told the jury, that for the purpose of justifying the killing, the intent of the deceased to commit a felony must be
 
 apparent,
 
 which would be sufficient, although it should afterwards turn out that the real intention was less criminal, or even innocent. He afterwards added, that the danger must be imminent—meaning, undoubtedly, that it must wear that appearance.
 
 The State
 
 v.
 
 Wells,
 
 (1
 
 Cox N. J. Rep.
 
 424,) is entirely consistent with this doctrine. The supreme court of Tennessee has gone still further, and held that one who kills another, believing himself in danger of great bodily harm, will be justified, although he acted from cowardice, and without any
 
 *201
 
 sufficient ground, in the appearances, for the killing.
 
 (Grainger
 
 v.
 
 The
 
 State, 5
 
 Yerger,
 
 459.) This was, I think, going too far. It is not enough that the party believed himself in danger, unless the facts and circumstances were such that the jury can say he had reasonable grounds for his belief.
 

 We have been referred to two cases where it was said, in substance, that the killing must be necessary;
 
 (Regina
 
 v.
 
 Smith,
 
 8
 
 Car. & Pay.
 
 160,
 
 and Regina
 
 v.
 
 Bull,
 
 9
 
 id.
 
 22;) and other authorities to the same effect might have been cited. Tlie life of a human being must not be taken upon slight grounds; there must be a necessity, either actual or apparent, for the killing, or it cannot be justified. That, I think, is all that was meant by such remarks as have been mentioned. The unqualified language, that the killing must be necessary has, I think, never been used when attention was directed to the question whether the accused might not safely act upon the facts and circumstances as they were presented at the time. ■ I have met with no authority for saying, that a homicide which.', would be justifiable had appearances proved true, will be criminal when they prove false.
 

 But it is said that our statute has changed the rule of the common law on this subject; and that there must
 
 in fact
 
 be danger of great bodily harm, or the killing cannot be justified. We know that such a change was not intended by the revisers, for they said in their notes, that the provision was “ according to the views of most of the writers on the subject, and the express decisions in Massachusetts and New Jersey.” Those writers and decisions have already been noticed. As I read the statute, it affirms the rule of the common law. The words are, ( homicide in self-defence is justifiable “when there shall be
 
 area-', sonable ground to apprehend
 
 a design to commit a felony, urj to do some great personal injury, and there shall be
 
 imminent
 
 j
 
 danger
 
 of such design being accomplished.” (2
 
 R. S.
 
 660, § 3,
 
 sub.
 
 2.) The words “ imminent danger,” in the last branch of the clause, do not mean, as the argument for the prisoner assumes, that there must in fact be an impending evil which is ready to fall; but only that there is a threatened evil, or one which appears as if it were ready to fall. There must be rea
 
 *202
 
 sonable ground to apprehend a wicked design, and apparent danger that such design will be accomplished. It is enough, oy the express words of the statute, that there is reasonable ground to apprehend a wicked design ; and it is absurd to suppose that such a provision was immediately followed by another, that the danger of the apprehended design being accomplished must be actual' and not merely apparent. Such a construction would make the last part of the clause nullify the first; for if there must be actual danger that the design will be accomplished, there must of necessity be an actual design to be accomplished.
 

 Although I cannot concur in the law of that part of the charge to which exception was taken on the trial, it does not necessarily follow that we must reverse the judgment. The evidence did not make a case for laying down the law of justifiable homicide; and an error of the court concerning an abstract proposition, having nothing to do with the matter in hand, is not a sufficient ground, for reversing a judgment. If every controverted fact mentioned in the bill of exceptions is taken in favor of the prisoner, the best case which he can possibly make will be substantially as follows: There was a sudden combat between the parties in the night, in which the deceased gave the first blow ; but the prisoner entered readily into the fight. The deceased had no weapon, and gave blows with his naked hands or fists, while the prisoner struck with a knife, inflicting not less than nine wounds, one or more of which were mortal. After several blows had passed, the deceased hallooed, “he has got a knife,” and retreated towards the middle of the street. The prisoner followed, and continued to give blows; the deceased at the same time either giving blows or defending himself against those given by the prisoner. The prisoner did not leave the side walk. When, the deceased got to the middle of the road, he cried out “ oh boys,” fell, and died in a few minutes. The prisoner did nothing to shun thfe combat, nor did he show any disposition to stop the fight after it had commenced. Although one witness thought the deceased had the best of the fight at first, no important.advantage was gained over the prisoner : he was neither knocked down, nor seriously injured, nor
 
 *203
 
 was he in any danger of life or limb. He followed when the deceased tried to escape, still giving blows with a deadly weapon, until very near the moment when the deceased fell down and expired. This is the most favorable statement of the case for the prisoner which can be drawn from the facts detailed* in the bill of exceptions ; and much more favorable than any intelligent jury would draw from the whole of the evidence. But talcing the case as I have stated it, there is no color for calling it justifiable homicide, or for leaving any such question to the jury. If it was not murder, it was manslaughter at the least; and so far as relates to these offences, no exception was taken to the charge. When a man is struck with the naked hand, and has no reason to apprehend a design to do him any great bodily harm, he must not return the blow with a dangerous weapon. After a conflict has commenced he must quit it, if he can do so in safety, before he kills his adversary: and I hardly need add, that if his adversary try to escape, he must not pursue, and give him fatal blows with- a deadly weapon.
 

 As there was no question of justifiable homicide in the case, -the prisoner had no right to call on the court to instruct the jury on that subject; and although the instruction given was wrong in point of law, I do not see how it can possibly have operated to the prejudice of the prisoner. As this is a criminal and a capital case, I cannot but feel a strong disposition to give the prisoner a new trial. But the law concerning bills of exceptions is the same in criminal as it is in civil cases ;
 
 (The People
 
 v.
 
 Wiley,
 
 3
 
 Hill,
 
 194, 214,) and we must not allow our feelings to draw us into the making of a bad precedent. I am of opinion that the judgment of the supreme court should be affirmed; and my brethren concur in this opinion, upon both the points which have been considered.
 

 Judgment affirmed.1