## MAGNESS *v.* STATE.

### Opinion delivered March 4, 1899.

1. HOMICIDE—EVIDENCE.—In a murder case where a negro was charged with killing a white man, the deceased's companion, also a white man, was the only eye-witness of the killing, and testified that deceased was drunk; that defendant passed them, and, in response to an offensive remark by deceased, turned back, and struck him with a wrench, and inflicted a wound from which he died. On cross-examination witness denied that a short time before the killing he told another negro that "no d—d African could keep him off the track." Defendant offered to prove by the negro last referred to that he met deceased's companion a few minutes before the killing; that the latter hit him a glancing lick with his shoulder, and said, "No African can butt me off the track." The court refused to admit such testimony. Defendant introduced other testimony to the effect that deceased and his companion were both drunk, and that deceased threatened to kill defendant, and made a movement as if to draw a pistol for that purpose. *Held*, that the testimony offered by defendant was improperly excluded, being competent to impeach the credit of the state's witness, and to strengthen the testimony of defendant's witnesses. (Page 598.)

2. TRIAL—ARGUMENT.—In a prosecution of a negro it was error for the court to refuse to allow his counsel to argue that the jury ought not to permit the race or color of defendant to prejudice them against him,

but such error was not prejudicial where the court instructed the jury to try the cause "the same as if defendant was a white man." (Page 606.)

Appeal from Independence Circuit Court.

RICHARD H. POWELL, Judge.

*J. C. Yancey* and *W. S. Wright*, for appellant.

The first instruction of the court was misleading, in that it told the jury that a specific intent "might be conceived in a moment." 25 Ark. 407; 36 Ark. 132; 51 Ark. 189. The court erred in so modifying the fourth and sixth instructions, asked by defendant, as to make them tell the jury that, to justify defendant in acting in self defense, the acts and conduct of deceased had to be such as appeared *to the jury* to be sufficient "to induce a reasonable person to believe that they had a murderous intent." The danger is to be viewed from the standpoint of the defendant at the time, and the honesty, not the reasonableness, of his belief is to be weighed. 59 Ark. 132; Clark, Cr. Law, 152. It was also error to exclude the evidence of witness Miller as to declarations made to him by one Freeze, a witness for the state, who was with deceased at the time of the killing, because: (1.) It tended to affect the credit of Freeze. 37 Ark. 85. (2.) It tended to show animus. 12 Ark. 800, 30 Ark. 340; 34 Ark. 480; 24 S. W. 413; 28 S. W. 817; 42 Ark. 70; 10 Ia. 568; 37 Miss. 383; 6 N. Y. 345; 44 Ill. App. 27; 16 Ark. 534; 17 S. W. 366; *id.* 425; 16 N. Y. Supp. 748; 1 S. W. 459; 42 O. St. 426; 52 Ark. 274. (3.) It tended to show a conspiracy between witness and deceased. 1 Ros. Cr. Ev. 573; 64 Ark. 251. (4.) It tended to prove a threat against defendant. 55 Ark, 593. (5.) It was part of *res gestœ*. 13 Ark. 236; 20 Ark. 216; 59 Ark. 422. (6.) It tended to contradict the evidence of Freeze. 8 Cox, C. C. 44; 3 Russ. Cr. 559 n.; 24 Ark. 620; 40 Ark. 487. It was error to refuse to allow counsel for defendant to tell the jury that the fact that defendant was a negro should not weigh against him.

*Jeff Davis, Attorney General*, and *Chas. Jacobson*, for appellee.

No particular length of time is required for the formation of a specific intent. 51 Ark. 189. The killing must appear to defendant, *as a reasonable and prudent man*, to be necessary, to justify on the ground of self-defense. 29 Ark. 248. The evidence fails to show any conspiracy between deceased and Freeze. Hence evidence of latter's declarations was properly excluded.

BATTLE, J. George Magness was indicted by a grand jury of the Independence circuit court for murder in the first degree, committed by killing one Joe Owen. He was convicted of murder in the second degree, and his punishment was assessed at twenty-one years' imprisonment in the state penitentiary.

To sustain the indictment, the state introduced only one witness who was present when Magness struck the fatal blow. He was Dempsey Freeze, who testified as follows: "I come into Newark on the 11th day of December, 1897, and met up with Joe Owen there. He was drinking or drunk, and I commenced at him to go home. I got him as far as the railroad below Mr. Tom Magness' cotton seed house. There was a boarding car there on the side track. And when we come to the car, we crawled under a part of the car, and this man Magness was coming up the track with a wrench in his hand. Just before he got to us, Owen fell down. Magness remarked: 'He is pretty full, ain't he?' I said 'No; not much.' Owen said: 'If you don't like me, you don't have me to kiss.' The negro said: 'What's that?' and Owen said: 'Go to hell,' and Magness turned back, and struck Owen on the side of the head with the wrench. I was helping Mr. Owen up. He had fallen down, and that was all that was said. I had Owen about half up, and he was making no effort to strike defendant. After defendant struck him, he turned and went the other way up the track." On cross-examination he further testified that he saw John Miller, a short time before he and Owen went to the railroad track, in front of Bud Sturdevant's drugstore, but did not tell him that "no d——d African could keep him off the track," and never had any such conversation with him.

The evidence adduced in the trial by the state showed that

Owen died within a few days from the effect of the blow struck by Magness.

The defendant offered to prove by John Miller that he met Freeze about fifteen minutes before he heard that Owen was killed, near Bud Sturdevant's drug store; that Freeze hit him a glancing lick with his shoulder, and said, "No African can butt me off the track;" but the court refused to permit him to do so; and defendant excepted. The defendant is a negro. He adduced evidence tending to prove that Freeze and Owen were under the influence of intoxicating liquor at the time they approached him; that they denounced him as a "black son of a bitch;" that Owen advanced toward him, and, threatening to kill him, placed his hand to his pocket as if in the act of drawing a weapon; and while Owen was in that position, Magness struck him, knocking him down; and while Owen was down, Freeze took something from his (Owen's) pocket, and placed it in his own.

The defendant asked, and the court refused to give, the following instruction: "The jury are instructed that if you believe from the evidence in this case that the defendant was first assaulted by deceased and his comrade with a murderous intent, defendant was not bound to retreat, but might stand his ground, and, if need be, kill his assailant; and if he struck the fatal blow believing that this was the intention of his assailants, that he was justifiable." But the court modified and gave it as follows: "You are instructed that if you believe from the evidence in this case that the defendant was first assaulted by deceased and his comrade with a murderous intent, defendant was not bound to retreat, but might stand his ground, and, if need be, kill his assailant; and if he struck the fatal blow, believing that this was the intention of his assailants (and the acts and conduct of the deceased were such as to induce a reasonable person to believe that they had a murderous intent), then he was justifiable."

The defendant also asked, and the court refused to give, the following instruction: "You are instructed that to justify a killing in self defense, it is not essential that it should appear to the jury to have been necessary; it is sufficient if the

defendant honestly believed, without fault or carelessness on his part, that the danger was so urgent and pressing that the killing was necessary to save his own life or prevent great bodily injury." And the court modified and gave it as follows: "You are instructed that to justify a killing in self defense it is not essential that it should appear to the jury to have been necessary. It is sufficient if the defendant honestly believed, without fault or carelessness on his part, that the danger was so urgent and pressing that the killing was necessary to save his own life or prevent great bodily injury, (and the acts of the deceased were such as to induce a reasonable prudent person to believe the necessity existed.")

The court stopped the counsel of the defendant, in his argument before the jury after the close of the testimony, when he was referring to the fact that "the defendant was a negro, and that this fact should not be weighed against him by the jury," and told the jury that the argument was improper, and that "they had nothing to do with the question as to whether the defendant was a negro or not, and that they must try him as they would a white man."

The appellant, Magness, insists that the judgment of the trial court should be reversed, and a new trial granted to him, for the following reasons:

(1) Because the court erred in excluding the testimony of John Miller.

(2) Because the court erred in refusing to give the instructions as asked by him, and in modifying them as given.

(3) And because the court erred in interfering with the argument of defendant's counsel.

His first contention is correct. The testimony of Miller should have been admitted. It was competent to impeach the credit of Freeze as a witness, and to show that he was biased against the defendant by prejudice against his race, and to strengthen the testimony of appellant's witnesses by showing that he was in that condition or "frame of mind" their testimony, if true, shows he was in when they testified that he participated with Owen in the attack upon Magness by vilifying him on account of his race.

The court erred in modifying the instructions asked by the defendant and copied in this opinion in the manner it did. Our statutes say: "In ordinary cases of one person killing another in self defense, it must appear that the danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary." But to whom must it appear that danger was urgent and pressing?

In Clark's Criminal Law it is said: "The authorities are overwhelmingly to the effect that it need only be apparently imminent, and that whether or not it was so in any particular case is to be determined by looking at the circumstances from the standpoint of the accused, taking into consideration the relative strength of the accused and his assailant, and all the other circumstances. If to the accused there was a reasonably apparent necessity to kill to save himself, he will be excused, though to some one else there might not have seemed to be any such necessity, and though in fact there was no such necessity. Most of the cases are to the effect that the circumstances must have been such as to excite the fears of a reasonable man, and the accused must have acted as an ordinarily cautious and reasonable man would have acted; or, in other words, there must have been a reasonable appearance of danger. or reasonable grounds to believe there was danger. But the court and jury must look at the circumstances from the standpoint of the accused. A coward will fear danger unreasonably, and the mere fear of a coward, without reason therefor, is not enough. A person must not be guilty of negligence in coming to the conclusion that he is in danger." Clark's Criminal Law, p. 152.

In McClain's Criminal Law it is said: "The person assailed in acting upon appearance and taking the life of his fellow man does so at his peril, and will not be excused unless the circumstances are such as would induce a reasonable man to believe it necessary to save his own life or save himself from great personal injury. But the reasonableness of the apprehension is to be judged from the standpoint of the defendant at the time and not from that of the jury. By this is not meant, however,

that the jury should ask themselves the question what they would have done under the circumstances surrounding the accused at the time, but that as sworn officers of the law they should look at all the circumstances surrounding the accused as they appeared to him, and ask themselves: 1st. Did the accused believe himself in imminent danger? and 2d. Were there circumstances such as would justify such a belief in the mind of a person of ordinary firmness and reason?" 1 Mc-Clain, Criminal Law, § 306.

Wharton, in his work on Criminal Law, says: "It is conceded on all sides that it is enough if the danger which the defendant seeks to avert is *apparently* imminent, irremediable and actual. But apparently as to whom? * * * The answer given by several of our courts to this question is, that if a 'reasonable man' would have held that the danger was apparent, then the danger will be treated as apparent. * * * But who is the 'reasonable man' who is thus invoked as the standard by which the 'apparent danger' is to be tested? What degree of reason is he to be supposed to have? If he be a man of peculiar coolness and shrewdness, then he has capacities which we rarely discover among persons fluttered by an attack in which life is assailed; and we are applying, therefore, a test about as applicable as would be that of the jury who deliberate on events after they have been interpreted by their results. Or, if we reject the idea of a man of peculiar reasoning and perceptive powers, the selection is one of pure caprice, the ideal reasonable man being an undefinable myth, leaving the particular case ungoverned by any fixed rules. And that this ideal reasonable man is an inadequate standard is shown by a conclusive test. Suppose the ideal reasonable man would at the time of the conflict have believed that a gun aimed by the deceased was loaded, whereas in point of fact the defendant knew the gun was not loaded; would the defendant be justified in shooting down an assailant approaching with a gun the defendant knows to be unloaded, simply because the ideal reasonable man would suppose the gun to be loaded? No doubt that in such case no honest belief of the ideal reasonable man would be a defense to the defendant who

knew that the belief was false, and that he was not really in danger of his life. And if the belief of the ideal reasonable man be not admissible to *acquit, a fortiori,* it is inadmissible to *convict.*   *   *   * Viewing the law in this respect on principle, we are compelled to hold that the question of apparent necessity can only be determined from the defendant's standpoint." 1 Wharton's Cr. Law (10 Ed.), §§ 488, 489, 491.

Mr. Bishop says: "In other words, and with reference to the right of self defense and the not quite harmonious authorities, it is the doctrine of reason, and sufficiently sustained in adjudication, that, notwithstanding some decisions apparently adverse, whenever a man undertakes self defense, he is justified in acting on the facts as they appear to him. If, without fault or carelessness, he is misled concerning them, and defends himself correctly according to what he thus supposes the facts to be, the law will not punish him, though they are in truth otherwise, and he has really no occasion for the extreme measure." 1 Bishop's New Crim. Law, § 305, sub. 2.

In *Shorter* v. *People,* 2 N. Y. 193, Mr. Justice Bronson, delivering the opinion of the court, said: "When one who is without fault himself is attacked by another in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life, or do him some great bodily harm, and there is reasonable ground for believing the danger imminent that such design will be accomplished, I think he may safely act upon appearances, and kill the assailant, if that be necessary to avoid the apprehended danger; and the killing will be justifiable, although it may afterwards turn out that the appearances were false, and there was in fact neither design to do him serious injury, nor danger that it would be done.   *   *   *   * I cannot better illustrate my meaning than by taking the case put by Judge, afterwards Chief Justice, Parker, of Massachusetts, on the trial of Thomas O. Selfridge. 'A in the peaceable pursuit of his affairs sees B walking rapidly towards him with an outstretched arm and a pistol in his hand, and using violent menaces against his life as he advances. Having approached near enough in the same attitude, A, who has a club in his

hand, strikes B over the head, before, or at the instant the pistol is discharged; and of the wound B dies. It turns out that the pistol was loaded with powder only, and that the real design of B was only to terrify A.' Upon this case the judge inquires, 'will any reasonable man say that A is more criminal than he would have been if there had been a bullet in the pistol? Those who hold such doctrine must require that a man so attacked must, before he strikes the assailant, stop and ascertain how the pistol was loaded—a doctrine which would entirely take away the right of self-defense. And when it is considered that the jury who try the cause, and not the party killing, are to judge of the reasonable grounds of his apprehension, no danger can be supposed to flow from this principle.' The judge had before instructed the jury that 'when, from the nature of the attack, there is reasonable ground to believe that there is a design to destroy his life, or commit any felony upon his person, the killing of the assailant will be excusable homicide, although it should afterwards appear that no felony was intended.' (Selfridge's Trial, p. 160; 1 Russ. Crimes, 699, ed. of '24, p. 485, note, ed. of '36.) To this doctrine I fully subscribe. A different rule would lay too heavy a burden upon poor humanity."

In *Batten* v. *State*, 80 Ind. 394, 404, Chief Justice Elliott, in a well considered opinion, said: "In all of the instructions which touch upon the point, the trial court declares that the appearances of danger must be such as would create in the mind of a man of ordinary prudence an apprehension of immediate and urgent danger. An ideal man is thus made the standard by which the guilt or innocence of the accused is to be determined. Is this correct? Should not the standard be the man himself? Ought regard to be had to real things, the man, the situation, the surroundings, or should some imaginary person be taken as the guide? There is some conflict in the cases. Our conclusion is that the question must be decided upon the appearances present to the eyes and mind of the accused himself, and upon the belief actually and in good faith entertained by him. Ultimately, the question whether there were appearances reasonably indicating great and immediate peril, and whether they did

actually inspire the accused with the honest belief of urgent and pressing danger, is to be decided by the jury. But the court is not to set up, as the standard by which the appearances are to be measured or the belief tested, an ideal man. In cases involving life, actual, real things rather than ideal should be taken as standards and tests. It is much safer and better to take the real man, the actual situation, and the real surroundings. There is not, of course, to be any inquiry as to whether he was a brave man or a coward, nor are kindred matters to be investigated."

In *Smith* v. *State*, 59 Ark. 132, this court said: "But to whom must it appear that the danger was urgent and pressing? According to reason and the weight of authority, it must so appear to the defendant. To be justified, however, in acting upon the facts as they appear to him, he must honestly believe, without fault or carelessness on his part, that the danger is so urgent and pressing that it is necessary to kill his assailant in order to save his own life, or to prevent his receiving a great bodily injury. He must act with due circumspection. If there was no danger, and his belief of the existence thereof be imputable to negligence, he is not excused, however honest the belief may be."

There ought not to be any controversy about this doctrine. A man, when threatened with the loss of life or great bodily injury, is compelled to act upon appearances, and determine from the circumstances surrounding him at the time as to the course he shall pursue to protect himself. When the danger is pressing and imminent, his own safety demands immediate and prompt action. Delay may involve the loss of his life or great bodily injury. In such cases he is from necessity the judge of his own action. There is a limitation, however, upon this right. The law imposes upon him the duty to act with due circumspection—without fault or carelessness on his part. If he takes the life of his assailant, the duty devolves upon the jury trying him to determine whether he has done so. To decide in the affirmative, they must find that circumstances and appearances present to him at the time of the killing were sufficient to induce in him a reasonable belief that he was in actual and

imminent danger of losing his life, or suffering great bodily injury. Unless such was the case, it cannot be said that he acted without fault or carelessness, or that he was justified or excused. It is not sufficient, however, to justify or excuse the killing that the circumstances and appearances were sufficient to inspire the accused with such a belief; but the belief must also have been actually and in good faith entertained by him. If he acted from real and honest convictions, induced by reasonable evidence, he cannot be held criminally responsible to the extent of the actual danger. "A contrary rule would make the law of self defense a snare and a delusion. It would become but a mockery of the sacred right of self preservation."

The trial court erred in modifying the instructions asked by the defendant, and in giving them as modified. The instruction asked by the defendant, and first copied in this opinion, is not a correct statement of the law, but the errors contained in it, as a whole, were prejudicial to the defendant. The other instruction as asked was correct as a legal proposition, but, if it had been given in the form asked, it should have been explained by additional instructions, in order to enable the jury to understand it fully.

Should the judgment of the trial court be reversed on account of the errors in the modified instructions? In *Deery* v. *Cray*, 5 Wall. 807, it is said: "It is a sound principle that no judgment should be reversed in a court of error when the error complained of works no injury to the party against whom the ruling was made. But whenever the application of this rule is sought, it must appear so clear as to be beyond doubt that the error did not and could not have prejudiced the party's rights." This rule was laid down in other cases by the same court. *Moores* v. *Nat. Bank*, 104 U. S. 625, 630; *Smith* v. *Shoemaker*, 17 Wall. 639; *Vicksburg & M. Railroad Co.* v. *O'Brien*, 119 U. S. 103; *Gilmer* v. *Higley*, 110 U. S. 50. In *Thacher* v. *Jones*, 31 Me. 534, it is said: "It should appear to be morally certain that erroneous instructions have not been injurious, before the party aggrieved can be deprived of a new trial." In other courts and cases the rule is said to be "that no judgment will be reversed on account of the giving of erroneous instructions, unless it

appear probable that the jury were misled by them," and by
others, that it should not be reversed, unless the instructions
were calculated to mislead the jury; and by others, that it
should be reversed if they tended to mislead. *Smith* v. *Carr*,
16 Conn. 450; *Benham* v. *Cary*, 11 Wend. 83; *Ocheltree* v.
*Carl*, 23 Iowa, 394; *Horner* v. *Wood*, 16 Barb. 386; *Hart* v. *Girard*, 56 Pa. St. 23; *Washington, etc., Ins. Co.* v. *Merchants & M. M.
Ins. Co.*, 5 Ohio St. 450; *Clarke* v. *Dutcher*, 9 Cowen, 674; 2
Thompson on Trials, § 2401; Elliott on Appellate Procedure, § 632,
643. In *Bizzell* v. *Booker*, 16 Ark. 329, this court said: "We
cannot tell what influence the action of the court had upon the
minds of the jury in coming to the conclusion which they did.
Possibly, the jury would have come to the same conclusion,
had the court charged them correctly as to the law of the case,
but we cannot undertake to say that they might not have rendered a different verdict. The plaintiff was entitled to have
them pass upon the facts with a correct understanding of the
law applicable to them, and when this is done, their decision is
final." And, so holding, this court reversed the judgment of
the trial court on account of errors in instructions, and remanded the cause for a new trial.

According to all authorities, the injurious effects of erroneous instructions determine whether a judgment should be reversed on account of them. But we cannot follow the jury to
their room, and ascertain to what extent they were governed
by the instructions. In view of this fact and the authorities
upon the subject, the writer of this opinion thinks the judgment should be reversed, in cases where the question is properly presented, when it appears that the erroneous instructions
in the case probably, or might have, misled the jury to the injury of the appellant; and that, if they reasonably could, they
probably did, unless the contrary appears.

In this case the modified instructions were based upon evidence which tended to prove that appellant struck the fatal
blow when the deceased was approaching, and threatening to
kill him, with his hand to his pocket, as if in the act of drawing a weapon. The evidence, however, did not show that deceased had any weapon. Upon this state of facts the court in-

structed the jury, in effect, that they should not acquit, unless the acts and conduct of the deceased "were such as to induce a reasonable person" to believe that he was in imminent danger of losing his life or receiving a great bodily injury. By these instructions the jury was left to determine who the "reasonable person" should be by whom the apparent danger should be tested. In this manner, the question the jury ought to have determined was not submitted to them. What a reasonable person might have believed, and did the appellant, under the circumstances surrounding him, have reason to believe that he was in imminent danger, are entirely different questions. It does not follow, by any means, because the appellant had reason to believe he was in danger, that a reasonable man would have so believed. Reason and belief do not always concur; and all reasonable men do not always reach the same conclusion upon the same evidence, and the same reasonable man does not always reach the same conclusion upon the same evidence under all circumstances. While there might have been reason to believe the danger in this case was imminent, there might have been other reasons to believe it was not, and, in the mind of the mythical reasonable person constituted by the jury their standard, the latter might have overcome the former. For the reasons given, Chief Justice Bunn and the writer think the instructions were calculated to mislead, and were prejudicial. Justices Wood and Riddick, while they agree as to the law of self-defense, do not think that the court committed a reversible error in giving the instructions as modified.

The circuit court erred in refusing to allow the counsel of the defendant the privilege of making remarks or an argument before the jury to convince them that they ought not to permit the race or color of the defendant to prejudice them against him in his trial. Such remarks were in the interest of justice and for a legitimate purpose. They were for the purpose of urging the jury to discharge a duty which was solemnly imposed upon them by the oath they had taken. In *Campbell* v. *The People*, 16 Ill. 17, the prisoner, who was a negro, asked the court to instruct the jury as follows: "It is

the duty of the jury to consider the prisoner's case as if he was a white man, for the law is the same, there being no distinction in its principles in respect of color." The trial court refused it, and the supreme court held that it erred in so doing. In this prosecution, however, the circuit court instructed the jury "to try this case the same as if the defendant was a white man."

For excluding the testimony of Miller we all agree that the judgment of the circuit court ought to be reversed; and Chief Justice Bunn and the writer think it ought also to be reversed for giving the instructions as modified.

Reversed and remanded for a new trial.

Absent HUGHES, J.

WOOD, J. The court was asked to give the following: "You are instructed that, to justify a killing in self defense, it is not essential that it should appear to the jury to have been necessary; it is sufficient if the defendant honestly believed, without fault or carelessness on his part, that the danger was so urgent and pressing that the killing was necessary to save his own life or prevent great bodily injury." The court over the objection of defendant modified it by adding after "injury" the following: "and the acts of the deceased were such as to induce a reasonably prudent person to believe the necessity existed." Section 1675 of Sandels & Hill's Digest is as follows: "A bare fear of those offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under their influence, and not in a spirit of revenge." The modification by the court was substantially in the language of the above statute, and cannot reasonably be construed to have a different meaning than that conveyed by the language of the statute itself.

Such being the case, it was not error to add the modification, although it was unnecessary to do so, as the same idea was conveyed in the instruction as originally asked. If the circumstances were not such as to excite the fears of a reason-

able man in defendant's situation, then defendant would have been at fault or careless in coming to the belief that it was necessary to kill the deceased in order to protect himself from death or great bodily harm at the hands of deceased. Therefore the modification was surplusage. But while the instruction in its present form could not be considered a clever precedent, still it was not prejudicial error to give it, for it was intended to and does state the law of self-defense as approved by this court in *Palmore* v. *State*, 29 Ark. 248, and *Smith* v. *State*, 59 Ark. 132, and other cases; and, as we have said, it was in conformity with our statute. The authorities cited by Judge Battle show "that the circumstances must have been such as to excite the fears of a reasonable man, and the accused must have acted as an ordinarily cautious and prudent man would have acted; or, in other words, there must have been a reasonable appearance of danger, or reasonable grounds to believe there was danger." In determining whether there were reasonable grounds for the defendant to believe, and whether he did honestly believe, that he was in danger of death or great bodily harm at the hands of the deceased, and whether he acted as a man of ordinary prudence would have acted, the court and jury must look at the circumstances from the defendant's point of view. See quotations from Clark's Criminal Law, p. 152; 1 McClain, Crim. Law, § 306; *Shorter* v. *People*, 2 N. Y. 193; *Batten* v. *State*, 80 Ind. 394, in the opinion by Judge Battle. The above I understand to be the law, as declared by our statute, approved by our court, and sustained by the overwhelming weight of authority. And I do not consider the instruction, as modified, to set forth any other doctrine, and the court therefore committed no reversible error in making the modification.

RIDDICK, J. While I concur in the judgment of reversal, and in what is said in the opinion of Mr. Justice Battle concerning the law of self-defense, I do not fully agree with his criticism of the instructions given by the trial judge. I think the instructions referred to are not only defective in form, but that it is hardly correct to say, as these instructions say, that the circumstances under which defendant

acted must have been such as "to induce" a reasonable person to believe that the danger was so urgent and pressing that the killing was necessary to save his own life or prevent great bodily harm.   It is sufficient if the circumstances were "calculated to induce" such belief in a reasonable person, or, to put it in different and perhaps clearer language, sufficient if the defendant had reasonable grounds to believe that he was in imminent danger if he honestly entertained and acted upon such belief.   But the opinion goes further, and condemns the reference to "a reasonable person" contained in these instructions.   The argument is that they thus set up a mythical or ideal reasonable person as a criterion by which to judge the defendant, and are therefore erroneous.

But I do not think the instructions are erroneous in this respect, for on that point they substantially follow the law as stated by this court in the case of *Palmore* v. *State*, 29 Ark. 248, a case which has been often approved in later decisions.   In that case, the court, quoting the statute, said:   "To excuse homicide, it must appear that the danger is not only impending, but so pressing and urgent as to render the killing necessary; and the circumstances must show that there was sufficient to arouse the fears of a reasonable person, and that the party killing really acted under their influence, and not in a spirit of revenge." *Palmore* v. *State*, 29 Ark. 266; *Levells* v. *State*, 32 *ib.* 585; *Fitzpatrick* v. *State*, 37 *ib.* 257; Sand. & H. Dig., §§ 1675–1676.

The law presumes that men are sane, and have ordinary reason, until the contrary is shown, and, as nothing appears to the contrary here, the judge could assume that the defendant was a sane man, possessed of ordinary reason, and accountable as such.   This being so, it seems to me that the instructions given in this case and the law as stated in *Palmore* v. *State* amount to the same thing as saying, though in different words, that to justify homicide on the ground of self-defense the defendant must not only believe that the necessity to take life exists, but there must be reasonable grounds for such belief on his part.   If the circumstances under which defendant acted were not calculated to raise in the mind of a reasonable person

placed in defendant's situation a belief of imminent danger, then it cannot be said that he had reasonable grounds for such belief; and if he had no reasonable grounds to believe that he was in imminent danger, he was not justified in taking life. *Shorter* v. *People,* 2 N. Y. 193. To quote the language of the supreme court of Massachusetts, the justification or excuse of self-defense rests on two propositions: "One the reasonable cause, the other the actual apprehension or thought of the defendant, and his purpose or intent. Both must exist, or neither will avail." *Commonwealth* v. *Woodward,* 102 Mass. 155. Not only this, but as a general rule "to justify the taking of life in self-defense the party must employ all means within his power and consistent with his safety to avoid the danger and avert the necessity." *McPherson* v. *State,* 29 Ark. 225.

It is of course true that the danger need not be actual; it is sufficient if it appears to the defendant to be so. If, being without fault himself, he acts upon the honest belief that the danger is actual and imminent, and has reasonable grounds for such belief, he will be excused, though it should turn out that he was mistaken. *Shorter* v. *People,* 2 N. Y. 193. No one would dispute this proposition, and I am inclined to the belief that this court was mistaken in attributing a contrary meaning to the instructions discussed in *Smith* v. *State,* 59 Ark. 132. On other grounds, though, I think the judgment in that case was correct, for that was not an ordinary case of killing in self defense. The defendant there was at the time of the killing assisting a peace officer endeavoring to make an arrest, and under the facts the instructions given seem to have been misleading. But, while the instructions there were misleading, I do not think they quite bear the meaning attributed to them in the opinion, and for the same reason I think the criticism of the instructions in this case is not altogether correct. While, therefore, I agree to the judgment, I must differ from some statements in the opinion.