————◆◆————

## SUPREME COURT.

CONRAD A. CROUNSE and WILLIAM CROUNSE, respondents agt. EBENEZER H. FITCH, impleaded with PETER A. CROUNSE, appellant.

This was a motion for a new trial on exceptions. The principal question in the case was, whether the plaintiffs *purchased* or *paid* the joint and several promissory note made by the defendants to one Ogsbury, and upon which the defendant Fitch was a mere surety for the defendant Crounse, who was a brother of the plaintiffs. The exceptions were taken on the trial by the defendant Fitch, to the rejection and admission of testimony by the judge bearing upon the question before stated—whether the plaintiffs, at the request of the defendant Crounse, their brother, *paid the note* to Ogsbury, or whether they *purchased* it of him. The offers and rejection of testimony contained in the exceptions, cannot be more succinctly and intelligibly stated than in the statement of the case, and the opinion of the court.

*Albany General Term, March,* 1862.

HOGEBOOM, POTTER and MILLER, *Justices*

MOTION for new trial on exceptions. This case was tried at the Albany circuit, before Mr. Justice GOULD and a jury, January 15th, 1861, and resulted in a verdict for the plaintiffs ; whereupon the judge ordered that the case should be heard on exceptions at the general term in the first instance. On a former trial, the defence was excluded by Mr. Justice GOULD, and a new trial ordered by the general term. The action was brought on a joint and several promissory note for $140, dated January 14, 1856, signed by defendants, and payable to Alexander and Jacob Ogsbury, or bearer, three days after date.

Fitch answered, setting up : 1. That he signed as surety for Peter A. Crounse ; and while the defendant, Peter A. Crounse, was solvent, Fitch requested the holders to prosecute and collect it of Peter A. Crounse, which they neglected to do until the said Peter became insolvent. 2. The payment of the note by Peter A. Crounse.

It appears that this note was given to Messrs. Alexander and Jacob Ogsbury, for a yoke of cattle purchased by Peter A. Crounse, and signed by Fitch as his surety ; that David H. Ogsbury acted as agent for the payees ; that the plaintiffs were brothers to Peter A. Crounse.

Evidence was then given, showing or tending to show, and also to disprove the facts set up in the first defence. Plaintiffs came into possession of the note in December, 1856, prior to which time, and during that month, the request to prosecute had been made to the agent, David H. Ogsbury, by Fitch. The defendant gave evidence to show that at the time of such request, Peter was solvent, and afterwards became hopelessly insolvent ; and this evidence was rebutted on the part of the plaintiffs.

In December, 1856, Peter A. Crounse kept the Clinton Hotel in Albany, and the plaintiffs, his brothers, were partners in business in Albany. After Fitch had given the

notice to Ogsbury to collect the note, Ogsbury called on Peter for its payment, and the next day Peter and Ogsbury went to the plaintiffs' store, when the plaintiffs paid to Ogsbury the amount of the note in suit.   The effect of that transaction was the principal question in the case.   The defendant claimed that this was a *payment*, by the plaintiffs, of the note for their brother, while the plaintiffs claimed that it was a *purchase* of the note from Ogsbury. Various exceptions were taken on this branch of the case, as hereafter stated, viz :

1. The judge excluded evidence that Peter told Ogsbury if he would call the next morning he would borrow the money.   It further appeared that the next morning Peter said he would go and borrow the money.

2. Also, that Ogsbury *understood* the payment made to him by the plaintiffs, as a *payment* of the note by them for Peter, and not as a *sale* of the note to plaintiffs.

3. Also, he excluded an answer to the following question to Ogsbury, " Did you ever sell that note to the plaintiffs or either of them ?" on the ground that it called for an opinion on a matter of law, and that the facts which there occurred must govern the character and legal effect of the transaction.

4. The following question was then put to Ogsbury : " Did you ever deliver that note to the plaintiffs, or either of them ?" which was excluded by the court as giving an opinion as to the legal effect of his acts.

5. The judge also excluded proof, that as Ogsbury and Peter left the store, Peter sent word to Fitch that the note was paid, this being in the absence of the plaintiffs.

6. The judge allowed proof of a conversation between the plaintiffs at the store, not in the presence or hearing of Ogsbury, and just before the payment or transfer of the note, whereby it appeared that William told Conrad that if they had the money to spare, they had *better buy the*

*note; that they might as well have the money at interest as lying in the bank, and that Fitch was perfectly good.*

7. He also refused to strike out this evidence after it appeared that it was a conversation between the plaintiffs in the absence of the defendants.

8. The plaintiffs having called Peter as a witness, and Peter having been cross-examined as to whether he borrowed the money of the plaintiffs, and as to whether he did not at that time tell Ogsbury the note was paid, and he should tell Fitch it was paid, the judge excluded evidence, claimed to be impeaching evidence, that Crounse did there say it was paid, and he wanted Ogsbury to tell Fitch so, on the ground that the evidence was incompetent, and that Crounse's statement was conclusive, and could not be contradicted, as it was on a collateral point. The same kind of proof, when offered to be shown by Fitch, was excluded.

The following exceptions were taken by the defendant, relating to evidence bearing on the question of Peter's solvency, viz :

1. John McEwen having given evidence as to Peter's pecuniary circumstances, and that he sold to him in November or December, 1856, the lease, furniture and liquors of the Clinton Hotel, for $3,000, the judge allowed proof of what the furniture brought at public sale the following spring.

2. Peter was allowed to state whether he paid to Mc Ewen the balance on the chattel mortgage after the sale in the summer of 1857.

Ira Shafer, *for plaintiffs, respondents.*
Lyman Tremain, *for defendant Fitch, appellant.*

By the court, Hogeboom, Justice. The first point made by the defendant for a new trial, is the alleged error of the judge in excluding the declaration of the defendant,

Peter A. Crounse, to David H. Ogsbury, the agent of the plaintiffs, on Christmas eve, that if he (said agent) would come the next morning, he could borrow the money. This was apparently offered to show that he would borrow the money to pay the note. I think the evidence was rightly rejected.

1. It was the declaration of the defendant as to his intended action at a future time, designed to affect unfavorably the rights of the plaintiffs in the action. This, *prima facie*, would make it inadmissible.

2. Though made to the agent of the then holders of the note, I think it was inadmissible to affect the present plaintiffs, as it did not accompany an act in regard to which the defendant had a right to inquire. If I understand the offer, it did not apply to the occasion when the agent of the Ogsburys demanded payment of the note, but to a subsequent occasion, after the defendant, Peter A. Crounse, had requested the plaintiffs to cash the note, and they had refused.

3. It may be doubted whether the testimony would have been admissible, even if it had occurred on the first mentioned occasion. I do not see why the declarations of one of the defendants, made at a time when he was called on for payment, as to his intention to provide for the payment subsequently, should be admitted to prejudice the subsequent holders of the note, who claimed that such subsequent transaction was in fact a *purchase* by them from the previous holders, instead of a *payment* by them for the benefit of one of the defendants.

4. Besides, the defendants got the benefit of the offered testimony substantially by proving the declaration of the defendant Peter, made the next morning, that he would go and borrow the money. This was quite as effective for their benefit as would be a declaration made the previous evening of his intent to do so.

II. I think the judge properly overruled the defendant's

offer to prove by Ogsbury that he *understood* the transaction by which the plaintiffs claimed to have acquired a title to the note by purchase, to have been a *payment* of the note by them for Peter. The transaction must be judged of by the facts, and declarations made contemporaneously with the transaction, or at least so *near* to it as properly to characterize it, and not by the opinion or conclusion of the witnesses as to the legal effect of such facts and declarations—the very conclusion which, under the law and the evidence, the jury were to draw from all the circumstances of the case, and which was the turning point of the entire litigation.

III. The same considerations dispose of the question put to the same witness, whether he sold the note to the plaintiffs. In ordinary cases, where the question was, whether certain *facts* really occurred or not, it might perhaps be unobjectionable to put the question in that form; but where, as in this case, the question was, whether *conceded* facts, or facts clearly proved, made out a *sale* or not, in contemplation of law, it was not improper in the judge to confine the parties in the evidence to what was strictly *matter of fact*, leaving to the court thereafter to apply the proper rules of law thereto. This was perhaps a case where a proper regard to the rights of the parties required a careful observance of this rule.

IV. For like reasons, the evidence, whether the witness ever *delivered* the note to the plaintiffs, was properly overruled. Under the circumstances, the judge had some reason to conclude that the inquiry was designed to call out, to some extent, the *opinion* of the witness, and therefore properly limited the range of inquiry to pure and unmixed questions of fact; and although the judge excluded the question put as to whether the witness *delivered* the note, the witness went on to answer to the question, first, *before* the judge excluded it, and secondly, *after* he excluded it, that he did nothing else with the note than

he had previously stated; thus making it evident that *all* the facts bearing on the question of *delivery*, so far as they were within his knowledge, were before the court and jury. The defendant was not, therefore, legally prejudiced, and the exceptions must fail. (*People* agt. *Wiley*, 3 *Hill*, 194, 214, 215; *Shorter* agt. *People*, 2 *Coms.*, 173, 204.)

V. The declaration of the defendant Crounse to Ogsbury, the agent of the former holders of the note, requesting him to state to his co-defendant that the note was *paid*, was rightfully rejected.

1. It was not a part of the *res gestæ*, the transaction having been completed.

2. It was not made in the presence of the plaintiffs, and prejudiced their rights.

VI. The most difficult question in the case seems to arise on the evidence admitted by the judge, of a conversation between the two plaintiffs themselves, favoring the purchase of the note. It was apparently *immediately* prior to the transaction of purchase or payment, if not a part of it; but it was not in the presence of either of the defendants. I am inclined, on the whole, to think it competent.

1. It was so near the actual transaction that it may, with some propriety, be said to have been a part of it. It immediately preceded it, and doubtless led to it, and was itself preceded by a conversation with one of the defendants and the agent of the former owners of the note.

2. It had direct and immediate relation to the object of the interview sought by the last named persons, and materially aided to give character and point to the act of purchase or payment which followed directly afterward. Looked at in this view, it had a nearer connection with the subject in hand, and tended more clearly to throw light on it, than some adjudicated cases in which the evidence has been admitted. (*See Stoval* agt. *Farm. & Mech. Bank*, 8 *Smedes & Marshall*, 305; *Allen* agt. *Duncan*, 11

*Pick.*, 308, 309, 310; *Rice* agt. *Bancroft*, 11 *Pick.*, 469; 1 *Ph. Ev.*, *Albany ed.* 1859, 185, *note* 80, 188, *note* 81.)

3. The fact of *purchase* or of *payment* depends somewhat upon the *intent* of the persons advancing the money. It was not material to the Ogsburys whether the note was extinguished or transferred. It was a transaction between the holders of the note and third parties (the plaintiffs,) in which the defendants (the makers of the note) were not directly concerned. I incline to think the payment of the money by the plaintiffs to the Ogsburys would, unexplained, import a *transfer* and not a *payment* of the note. The evidence, therefore, would not seem to have been injurious to the defendants, because it only favored a conclusion which was a legitimate one from the transaction itself, without this added testimony. I am inclined, on the whole, to regard the admission of this evidence as not of such a character as to demand a new trial for that reason.

VII. The declarations of the defendant Peter A. Crounse, which on the former part of the trial had been rejected as direct evidence of payment of the note, as against the plaintiffs, were, in a subsequent stage of it, again offered to countervail the effect of his testimony after he had been examined as a witness for the plaintiffs. They were rejected by the judge, and, I think, properly.

1. On examining the testimony of Peter, on the part of the plaintiffs, it would appear that they carefully abstained from asking him any questions about the payment or non-payment of the note. The testimony is not, therefore, admissible for the purpose of impeaching his testimony as given on his direct examination.

2. On his cross-examination he did deny that he had told Ogsbury to tell Fitch the note was paid. But I think this did not justify the defendants in calling Ogsbury, or some other person, to contradict him on this point. It came out on the defendants' and not on the plaintiffs' examination. The fact itself, whether he had made such a *declaration*,

was a collateral, and not a direct or primary fact in the case. And although it would have been pertinent enough, if, on the plaintiffs' direct examination, he had sworn the note was not paid, yet I think the defendants could not, without examining him at all on the question of payment, call out simply his declarations on that subject, thus making him their own witness to that extent, and then claim the right to contradict him on that· point by independent evidence. (*See Harris* agt. *Wilson*, 7 *Wend.*, 57; *Lawrence* agt. *Barker*, 5 *Wend.*, 301, 302; 2 *Ph. Ev.*, *Albany ed. of* 1859, 902, 903 ; 2 *Ph. Ev.*, 970.)

VIII. The proof of what the furniture of the defendant Peter A. Crounse (whose solvency or insolvency, at the time of the request to prosecute, was a material question in the case,) brought at a *public* sale, a few monts afterwards, when it appeared it had not materially deteriorated, was admissible evidence on the question of value, within the rule laid down in *Campbell* agt. *Woodworth*, (20 *N. Y. R.*, 499.)

I have thus considered all the material exceptions on which the defendant relies, and am of opinion that none of them are well taken. The case seems to have been closely tried and fairly submitted to the jury, and I think their verdict in favor of the plaintiffs ought not to be disturbed.

The motion for a new trial must be denied.