## EVERS v. PEOPLE.

*Criminal evidence — opinions as to motive for act — assault with intent to do bodily harm. Criminal law — right of person threatened with attack to defend himself.*

At a trial for an assault with a dangerous weapon, the defense was apprehended violence from the complainant. The prisoner had testified to a motion made by complainant, whereby he was led to believe that the complainant (who had struck him) intended to draw a pistol, whereupon the judge asked " can you explain to me this thing, * * * why he should have put his hand in his pocket after giving you three terrific licks in the face ? What was the occasion of his drawing a pistol?" and " I don't see why a man, whipping you every day, that you should suspect that he would draw a pistol?" *Held,* that the questions were improper, as calling upon the prisoner to state a motive, for complainant's act, and that the error, was such as to warrant a reversal.

Although, when a person is maltreated, it is his duty to seek protection from the authorities, an omission to do so does not deprive him of the right to defend himself when attacked to the same extent as if he had sought such protection. Accordingly, a charge that it was the duty of the prisoner, if he believed his life or person to be in peril from the assaults of complainant, to invoke the authorities and that all that he had to do was to make a complaint, etc., to deter complainant from the commission of any violence, was foreign to the issue, calculated to mislead the jury, and erroneous.

ERROR to the New York Court of General Sessions to review the conviction of Frederick Evers for assault with a dangerous weapon, with intent to do bodily harm. Sufficient facts appear in the opinion.

*William F. Howe,* for plaintiff in error.

*B. K. Phelps,* for the people.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

BRADY, J. The defendant was arraigned for an assault with intent to kill or do bodily harm. The defense was justification. The evidence on the part of the prisoner tended to show repeated acts of violence against him by the complainant, and threats against his life, which the prisoner asserted he believed the complainant

Evers v. People.

would carry out. On the occasion when the assault was made for which the prisoner was tried, the complainant began the disturbance by assailing the former, as the prisoner stated, and he was sustained in the material part of his evidence thereupon by other witnesses.

The question for the jury was whether the prisoner was justified in believing himself to be in peril, and, under the rules of law, authorized to resort to the weapon used to protect himself. These rules were properly stated to the jury, and although it is apparent that the learned recorder entertained very decided views of the case presented, he cautioned the jury against their influence upon them, instructing them that it was their duty to decide the questions involved, and to decide them upon their own appreciation of the evidence. Upon this element of the charge, therefore, if there had been a valid exception, it would necessarily be held that there was no error committed. The expression of judicial opinion in these cases has not been regarded as an erroneous exercise of judicial power. Whether the prisoner was justified in doing what he did, depends upon the credibility given to either of the class of witnesses called respectively by the people and the prisoner. They were in conflict upon the origin of the fracas, and the details marking its progress and consummation, and, therefore, the verdict rendered must be conclusive, unless some error, arising or presented upon exception, was committed during the trial.

The prisoner, upon his examination, described a motion of the complainant's hand by him during the collision between them, from which he thought the latter designed to take a pistol from his pocket, and, in reference to that circumstance, the learned recorder asked the question : " Evers, can you explain to me this thing ? While Curran, that was able to whip you, kept picking at you for amusement, why should he have put his hand in his pocket after giving you three terrific licks in the face ? What was the occasion of drawing a pistol ? " To which the prisoner's counsel duly excepted. The prisoner answered : " Your honor, I am no fighting man ; he is a very desperate man ; I do not fight ; " and it was followed by the further question : " I don't see why a man, whipping you every day, that you should suspect that he would draw a pistol ? " which was answered, and without exception, as follows : " He was threatening my life all the time he seen me ; he has thrown a man overboard ; he was threatening me all the time, call-

ing me never by my right name ; I have a license for keeping a sailors' boarding-house ; he has not ; it is not lawful for him to do it."

The question excepted to was objectionable. It called upon the prisoner to furnish the reason or state a motive for an act which he regarded as indicative of a design to kill him, or do him some bodily harm, and which was in fact the pivot point of his defense. He was not bound to explain the complainant's conduct, or to express any opinion upon his motive, object or intent, or to give any reason for any or either of them. He was under no obligation to answer, therefore, the question propounded, and should not have been subjected to it. That course of inquiry might have been indulged on the examination of the complainant, and it was a proper consideration of the jury in determining upon the evidence whether the prisoner was warranted in believing himself in peril. The prisoner was to be held bound to answer as to facts and circumstances, and not to give philosophical deductions. In establishing his defense, it was sufficient for him to show a reasonable ground for apprehending a design to take his life, or to do him some great bodily harm, and also a reasonable ground to believe the danger imminent that such design would be accomplished, although it might afterward turn out that such appearances were false and there was in fact no such design, or any danger that it would be accomplished. The accused must, in such cases, decide at his peril upon the force of the circumstances in which he is placed, for that is a matter subject to examination. *Shorter* v. *People*, 2 N. Y. 193.

The question indeed called upon the witness to explain two things, namely, why should the complainant, under the circumstances, put his hand into his pocket? what was the occasion of his drawing a pistol? His response, as an answer to the question, was a failure. He explained neither. He reiterated some of the elements of his defense, but gave no explanation. His failure in that respect may have prejudiced his case. It is impossible for us to say that it did not. The object of the question or its purport it is not difficult to understand. The learned recorder when it was asked seems to have been impressed with the conviction that the complainant being the superior power — the conqueror, so to speak — it was absurd in him to resort to a weapon, but that was for the jury to determine, not upon the reasons or opinions of the defendant, but upon the facts and circumstances disclosed.

It is not improper to suggest that' the history of violence, as revealed by cases of this character, well demonstrate that the victor does not always rest upon his triumph, but completes it by unnecessarily killing his victim. His passion sometimes governs, and not his reason, and he is not, therefore, always rational in his conclusions upon the events in which he has taken part. It did not follow, as a necessary consequence, that the complainant having struck the prisoner "three terrific blows in the face," and being apparently master of the situation, he would not make any other hostile demonstration, or give any other evidence of an intention to continue the violence.

At all events we cannot say that the question did not do the prisoner any injury; that it is clear beyond rational doubt that no harm was done to the party objecting, and upon well-settled principles of evidence that is sufficient to demand a reversal of the judgment. We cannot say that the question and the answer given would not have a tendency to either excite the passions, arouse the prejudices, awaken the sympathies, or warp or influence the judgments of the jurors in any degree, and thus overcome the decisions on the subject. *People* v. *Gonzalez*, 35 N. Y. 59; *Vandervoort* v. *Gould*, 36 id. 644; *Anderson* v. *Rome, W. & O. R. R. Co.*, 54 id. 334.

It may be further said that when a person is subjected to maltreatment by another he may seek protection from the authorities, and even that it is his duty to do so as a conservator of the peace; but the omission to do it does not in any way deprive him of the protection of the law, and when assailed he may defend himself in the same manner, and to the same extent and by the same means, as if he had sought the protecting arm of the law. The question is not, in such cases, whether the prisoner has sought that remedy, but whether he was in imminent peril, or was justified in believing himself to be, when he did the act complained of. See cases *supra*. The charge of the learned recorder that "If this prisoner believed that his life or person was in jeopardy and peril by the alleged repeated assaults made by the complainant, it was his duty to have invoked the aid of the authorities to aid in saving him from the infliction of any wrong, or punishing the offender for a wrong committed. All that the prisoner had to do was to make a complaint before a magistrate, and the complainant would have been forced to have given bonds to keep the peace to deter him from the

commission of any violence," and to which exception was taken, was, therefore, foreign to the issue and erroneous. It was calculated either to lead the jury to the conclusion that the duty suggested was so coupled with the other elements of justification as to make that defense incomplete without its performance, or to the conclusion that the prisoner had, by omitting to do as suggested, failed to do his duty and was censurable. In either point of view it was objectionable. It had, and it is said with great respect, no pertinent application to the facts developed, and had no legitimate bearing, therefore, upon the issue to be determined.

We think the judgment should be reversed and a new trial ordered.

*Judgment reversed and new trial ordered.*