PEOPLE v. CANTOR.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

MANSLAUGHTER—SELF-DEFENSE—INSTRUCTION.
Where the evidence in a prosecution for manslaughter presents a fair question of fact as to whether defendant was not justified in killing deceased in self-defense, failure to affirmatively instruct that defendant was entitled to acquittal if the jury entertain a reasonable doubt whether he was so justified, is error requiring reversal.
Ingraham, J., dissenting.

Appeal from court of general sessions of New York county.

David Cantor was convicted of manslaughter, and he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

R. M. Moore, for appellant.
Howard S. Gans, for the People.

HATCH, J. The defendant was indicted for the crime of manslaughter in the first degree, and upon a trial was convicted of the offense charged in the indictment, and was sentenced to imprisonment in the state's prison at hard labor for a term of 10 years. The evidence, as disclosed by the present record, shows that the case

presented a fair question of fact as to whether the defendant was not justified in committing the act for which he was indicted and convicted. Under such circumstances it became the duty of the trial court to protect the defendant in every right which the law has furnished for his protection, and to see that he had the full benefit of every matter tending to show exculpation for the commission of the act. It also became the duty of this court, in review of the trial, to scrutinize the record with care, in order that it may see that the defendant has had the full measure of benefit secured to him by the law. To this end we have carefully examined the whole of the testimony and the proceedings had upon the trial. The act charged constituting the crime was the shooting of one O'Hara with a pistol on the night of the 5th of January, 1901. It was conceded upon the trial that upon that night the defendant shot O'Hara with a pistol, inflicting a wound from which he subsequently died. The defense interposed was that of excuse and justification. In order that such defense should prevail, it became necessary to have it appear that the act was accidental, or that it was done in self-defense, and that the circumstances were such that the defendant had reasonable ground to apprehend some great injury to his person by the deceased at the time when he committed the act resulting in death, or that he was in imminent danger of receiving irreparable personal injury at the hands of the person whom he killed. Pen. Code, §§ 205, 26. In order to prove the justification which the law contemplates, it is not necessary to establish that in fact great personal injury would have been actually inflicted. The defendant had the right to act upon appearances, and, if they were of such a character as to furnish a reasonable ground for believing such danger to be imminent, he was justified in acting upon such appearances, and will be excused for his act. Shorter v. People, 2 N. Y. 193, 51 Am. Dec. 286; Evers v. Same, 3 Hun, 716; People v. Kennedy, 159 N. Y. 346, 54 N. E. 51, 70 Am. St. Rep. 557. It was established upon the trial that the defendant conducted a pool and billiard room at No. 2630 Broadway, in the city of New York; that cigars and cigarettes were sold upon the premises, but no liquor was kept or sold in the place; and that the business was conducted in a respectable and law-abiding manner by the defendant. It was also established without dispute that on the night in question one Teatom and the deceased, O'Hara, visited the defendant's place, arriving there about 20 minutes before 12 o'clock; that Teatom applied to the defendant for permission to play a game of pool, and that the defendant refused such permission, stating that it was too near closing time, and that, in obedience to a direction by the police authorities, he must close his place at 12 o'clock. The defendant at this time was engaged in playing pool with another person, and he announced to those in the room, of whom there were 25 to 30 persons, that the game then in progress was the last that could be played. Teatom was somewhat under the influence of liquor, and, instead of complying with the defendant's refusal to permit him to play, he went to one of the tables where an open game was in progress, and asked permission of the players to join in it. Permission was given, as Teatom says, by

the players, and he procured a cue, intending to join in the game. The defendant thereupon interfered, and attempted to eject Teatom and the deceased from the room. A contest followed, in which both Teatom and the deceased participated, and they inflicted upon the person of the defendant severe punishment. The proof given as to the character of this contest was in many respects somewhat contradictory and quite confusing, but it clearly appears that the defendant received severe injuries at the hands of the deceased and Teatom, and that the affray was continued from its commencement down to the time of the shooting. At that particular moment, just what was the attitude of the respective parties is not made clearly and satisfactorily to appear. Some of the witnesses say that the deceased and Teatom were at the door, evidently about to leave the room, and that the defendant fired the pistol when the deceased was some feet away from him; other witnesses testify that the deceased, at the time when the shot was fired, stood over the defendant, who was then partially down upon the floor, and that the attitude of the deceased was one which threatened the defendant with further punishment. It is clearly evident from the whole of the testimony that the defendant, at the time in question, was conducting his business in a lawful manner, and was in no wise interfering with the deceased or Teatom. At the time these men entered the room the hour for closing was near at hand, and defendant did what was his lawful right to do,—refused their application to play pool,—and gave the reason why it could not be permitted. Disregarding this refusal, and in defiance of it, they attempted to play; and the defendant, still acting within his legal right, sought to prevent their playing, and to remove them from the room. He had the right to require that they should leave, and, if they refused, to use such force as was necessary to eject them. From all that appears, it is evident that this is what he attempted to do. The deceased and Teatom, in violation of law, resisted the commands to leave, and made an unwarranted assault upon the defendant; an assault of such a character as inflicted upon him quite severe injuries. It is evident that this contest was continuous from the beginning to the end, and the jury would have been justified in finding that at the time when the fatal shot was fired the assault by Teatom and O'Hara upon the defendant was still progressing, and that, in view of all the circumstances, there was reasonable ground for apprehension that he would suffer great bodily harm unless he did something to cause his assailants to desist from their attack. Of course, upon all of the testimony the jury were authorized to find that, from all the surrounding circumstances, the defendant was at no time in such a position of danger as would justify a belief, or furnish reasonable ground therefor, that he would suffer either great bodily harm or serious injury, and was therefore not warranted in taking human life. In view, however, of the fact that up to the time of the shooting the defendant had acted clearly within his legal right, and that Teatom and O'Hara were guilty of an unlawful act, and were the aggressors throughout the whole proceeding, the defendant becomes entitled to have his acts scrutinized with care, and to be given the benefit of every circumstance and rea-

sonable doubt of which the case permits. And if, upon all the testimony, a reasonable doubt is presented of his right to believe that he was in great danger of bodily harm, he was entitled to the benefit of such doubt, and to have the same clearly, fully, and accurately presented for consideration by the jury. We are quite aware that the taking of human life is a matter of such serious import that there must always exist full justification for the act; but it is equally true that a person taking human life, which may be justified, dependent upon how such circumstances are viewed, is entitled to the benefit, fairly and fully, of every exculpating circumstance. It has sometimes been said that the defense of justification, where the taking of human life is established, is a burden placed upon the person responsible therefor. Yet this is not an entirely accurate statement of the law. The burden is upon the people throughout the trial to establish the crime charged beyond a reasonable doubt; and if, upon the whole case, considering all the testimony given by the prosecution and by the defendant, there arises a reasonable doubt of the defendant's guilt, he becomes entitled to an acquittal; and this doubt applies to the question of justification as well as to every other question which is essential to be proven in order to establish the commission of the crime as charged. People v. Shanley, 49 App. Div. 56, 63 N. Y. Supp. 449; Same v. Epaski, 57 App. Div. 91, 67 N. Y. Supp. 1033; Same v. Willett, 36 Hun, 500.

In view, therefore, of the law, and the rights of the defendant thereunder, it becomes necessary to examine the charge of the learned trial court upon this subject. In this respect the court said:

"If this defendant killed O'Hara,—as I understand from the uncontradicted evidence, as well as the admissions of the defendant's counsel, that he did,—he is criminally liable for that act, unless you gentlemen come to the conclusions, from all the evidence in the case, that he was legally justifiable or excusable in doing it."

And again:

"It being conceded that O'Hara is dead, and that this defendant killed him, was his act justifiable or excusable before the law? If you come to the conclusion that he was neither legally justifiable nor excusable, he is then guilty of criminal homicide."

After defining manslaughter in the first and second degree, the court said:

"If you should conclude that he is guilty, upon the evidence, beyond a reasonable doubt, of manslaughter in the first degree, your verdict will be, 'Guilty as charged in the indictment.' * * * Now, as I said before, gentlemen of the jury, if this defendant, before the law, was not excusable or justifiable in killing the deceased, he is clearly guilty of one of those degrees of homicide. There is no escaping it."

The court then defined to the jury the question of excusable and justifiable homicide, saying:

"Now we come to justifiable homicide, which you have frequently heard alluded to during the trial, and which counsel for the defendant, if I remember correctly, stated was their defense. In other words, the defendant says, 'Yes, I did kill the deceased, and before the law I was justified in killing him.' Therefore you must understand that you are the judges as to whether he was justifiable or not. You are the ultimate judges to listen to all of the

evidence, and you are to determine as to whether or not he was justified before the law in taking this human life."

The court then defined "justifiable homicide," stating, so far as is presently important:

"It is an inherent right, belonging to every individual, under certain circumstances to take the law in his own hands. But the organic law steps in, and says what those circumstances are which justify him in taking it. He may do it 'when there is reasonable ground' (mark the words, 'when there is reasonable ground') to apprehend a design on the part of the person slain to take his life, or to do him some great personal injury. The keystone—the keynote—of the law of self-defense is necessity, real or apparent. Whether there is necessity or not is the question which you gentlemen are to determine from all of the circumstances in this case. A man may repel force by force, but he must not use unnecessary force. The force must be measured by the real or apparent necessity. * * * In this case, therefore, gentlemen of the jury, it seems to me that that is a very important step for you to determine,—whether you come to the conclusion, from all the evidence in this case, that the defendant had reasonable ground to believe that his own life was in danger, or there was some great personal injury threatening him, which was imminent of being put to immediate execution. * * * You are the ultimate judges of the necessity, and the defendant cannot state, 'I thought I was in danger,' and make that the end of the case. * * * You are the ultimate judges, and you are to determine whether or not the circumstances in this case, as you will find them, reasonably justified this defendant in having a reasonable belief that his own life was in danger, or that some personal injury threatened him. If you come to the conclusion, from all the evidence in this case, that he had a right to apprehend such a design as I have stated, and that he used no more force than was necessary in repelling the force that was brought against him, then he is clearly not guilty; but if, on the contrary, you believe that he went beyond the necessities of the occasion,—that he used more force than was necessary,—and that he had no reasonable ground to believe that either there was a design to take his life or to inflict serious bodily injury upon him, then he had no right to kill this person." And again: "If you think, under all the circumstances, that he was justified in taking this man's life, before the law, as I have defined it to you, or that he was excusable in doing so, acquit him. That ends it. But, if you do not think that he was excusable in doing so, or justifiable, I know that you will perform your duty."

Upon the subject of reasonable doubt the court charged:

"Now, a word with reference to the question of reasonable doubt. Reasonable doubt, as I have frequently said to juries, in my judgment, is best defined by the words themselves 'reasonable doubt.' The term does not mean an unreasonable doubt. It does not mean a speculative doubt. It does not mean a doubt which you can find outside of the evidence of the case. Therefore reasonable doubt, as I always say to a jury, is a doubt which is reasonable, and twelve intelligent men come to upon the evidence. The only lamp which you have to guide you, or the principal one, is the testimony in the case; and if you, gentlemen, on reviewing the evidence carefully and conscientiously, can conscientiously say, 'Well, I have a reasonable doubt, on the evidence, as to whether this man is guilty or innocent,' then it is proper that he should be acquitted."

Nothing else was said upon the question of reasonable doubt, except when the court spoke of that subject in connection with the definition of the crime of manslaughter in the first degree. The court, in its charge, called attention many times to justifiable and excusable homicide, and all of the substantive parts upon that subject we have quoted. There was not a syllable in the charge of the learned court

upon this subject which explained or intimated to the jury what might be the effect of the evidence given to establish the defense which the defendant interposed to the indictment, even though it failed to satisfy the jury affirmatively. Under the evidence, as we have seen, and the law applicable thereto, the burden of establishing the guilt of the accused of the crime charged in every essential aspect rested upon the people. They bore that burden from the beginning to the end of the trial. We think it impossible to read this charge and fail in concluding that the jury must have received the impression that the burden of justifying the act rested upon the defendant, and that it was not sufficient that the defense raised a reasonable doubt of the guilt of the defendant of the crime charged. The personal pronoun was used in almost every instance, "Was 'he' justified," not, whether the people had established to the satisfaction of the jury beyond a reasonable doubt that the defendant was guilty of the crime charged. To this charge the defendant was clearly entitled; and, not only so entitled, but the evidence clearly justified, and not only justified, but required, that the jury should be made fully to understand the obligation that rested upon the people to establish beyond a reasonable doubt that he was guilty of the crime charged. We cannot escape the conclusion that there was conveyed to the minds of the jury the impression that the defendant must establish to their satisfaction that the act was either justifiable or excusable. Such impression was distinctly prejudicial to the defendant, and could scarcely have resulted otherwise than in creating the view that the defendant had not made out his defense. It is quite possible that a trained legal intellect might draw from the charge of the learned court the inference that the court intended it to be understood that the burden of establishing all the elements of guilt rested upon the people, and make application of such rule in giving to the defendant all the benefit to which he was fairly entitled. It is equally true, however, that an intellect not so trained in making legal distinctions would conclude from the charge, and thereby be led to believe, that the burden of establishing to the satisfaction of the jury justification for the act rested upon the defendant; and we are convinced that such result is necessarily to be deduced, and that the jury must have so understood it. The defendant was thereby deprived of the benefit of the rule above adverted to,—that if, upon the whole testimony, there was a reasonable doubt raised in the minds of the jury as to whether the defendant was justified or not, he was entitled to the benefit of such doubt, and, if it existed, to an acquittal of the offense charged in the indictment. Upon this subject there is not even an intimation in the charge. So far as the court spoke of a reasonable doubt, it related to the crime of manslaughter in the first degree, and the subject was not again mentioned, except by way of definition as to what constituted a reasonable doubt. Nothing whatever was said as to the burden of proof, or as to the application of such reasonable doubt, in connection with the burden which rested upon the people. These were vital and crucial questions when applied to the evidence developed upon this trial. No one, we think, can read this record without reaching the conclusion that it pre-

sented a fair question as to whether or not the defendant was justified in what he did. He therefore became entitled, as matter of strict legal right, to have such rights guarded in every manner authorized by the law; and while, in the abstract, the charge of the learned trial court correctly stated the law, yet it clearly failed in stating all of the law, and the parts omitted were vital to the defendant, and might have been controlling in his favor if they had been fully stated and explained to the jury. Upon so important a matter we think great prejudice and much harm is the necessary result of the omission to which we have called attention, and that justice requires the granting of a new trial in this case

It follows that the judgment of conviction should be reversed, and a new trial granted. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. I dissent. It is conceded that there was presented a fair question as to whether the defendant was or was not justified in killing the deceased. As I understand the prevailing opinion, it is also conceded that there was no error in the charge of the court as delivered. There was no exception to the charge, and no request to charge that the court refused. The judgment is reversed because it is claimed that the court failed to explicitly charge that if there was, upon the whole case, a reasonable doubt as to whether the defendant was justified in taking life, the defendant was entitled to the benefit of that doubt. The court charged that, if the jury should conclude that the defendant was guilty upon the evidence, beyond a reasonable doubt, of manslaughter in the first degree, their verdict should be, "Guilty as charged in the indictment"; that if the jury "can conscientiously say, 'Well, I have a reasonable doubt on the evidence as to whether this man is guilty or innocent,' then it is proper that he should be acquitted." If the defendant was justified in taking the life of the deceased, he was not guilty as charged in the indictment, and so the jury were told in express terms; and I think the charge of the court covered the position taken in the prevailing opinion that, if there was a reasonable doubt as to whether or not the defendant was justified, he was entitled to the benefit of that doubt. The court was not requested to specifically state to the jury that this reasonable doubt was applicable to the question of justification. There was no request to charge upon the subject. The charge, as delivered, was satisfactory to the defendant. He was defended by experienced counsel, was himself examined as a witness, and produced all the testimony that he desired. To say that in such a case, because the charge of the court was not as full upon a question of law as the defendant would have been entitled to had he requested it, when he did not call the attention of the court to the omission to charge upon the subject, justifies a reversal, is adding a new element of uncertainty in the administration of the criminal law. If a judgment is to be reversed because the court has not charged fully upon a particular question of law, where no request of the defendant was refused, where there was no exception to the charge, and where the attention of the court was not called to the omission,

but few convictions in criminal cases could stand. The defendant was entitled to a fair trial. He was entitled to have the question as to his guilt or innocence fairly submitted to a jury. But when that was done, and the charge, as delivered, was satisfactory, no objection or exception to it having been taken, the fact that the charge was not as full upon a particular question as an appellate court thinks it should have been should not, I think, be considered a reason for a reversal of a conviction. I think the courts of this state have gone far enough in reversing judgments in the absence of an exception taken at the trial; and a mere omission to charge a proposition of law that the defendant did not request, where the omission was not called to the attention of the court, has never been, so far as I know, a ground of reversal, and I am not willing to concur in adding this as a ground for a reversal of a conviction for a criminal offense.